UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                    :

KEVIN REAVES,                                    :          **MEMORANDUM**
                                                 :          **DECISION AND ORDER**
                                    Petitioner,  :
                                                 :           16-cv-2221 (BMC)
                  - against -                    :
                                                 :
SUPERINTENDENT, FIVE POINTS                      :
CORRECTIONAL FACILITY,                           :
                                                 :
                                    Respondent.  :
------------------------------------------------------------ X

**COGAN**, District Judge.

        Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 on his state court conviction

for second degree attempted murder and second degree criminal weapons possession, for which

he was sentenced to concurrent terms of imprisonment totaling 21 years.  The facts will be set

forth below as necessary to address each of petitioner's points of error but, to summarize, this

was a gang-related shooting in which petitioner shot and severely wounded a former member of

a rival gang, Iesa Britt, recognizable by his gang tattoos, for intruding on the turf of petitioner's

gang.  Although Britt got a good look at petitioner prior to being shot, Britt initially declined to

cooperate with the police.  Nevertheless, a couple of months after the shooting, he picked

petitioner's picture out of a mug book and then identified petitioner in a lineup and subsequently

at trial.

        Each of the claims raised in the petition is addressed below.  None of them have merit

and the petition is therefore denied.

## I. Claims Rejected on Direct Appeal

### A. *Photographic Identification and Resulting Lineup*

#### 1. Background

Petitioner asserted in pretrial proceedings and on direct appeal that the prosecution had failed to meet its burden[1] of showing that Britt's identification of his picture in the mug book was not unduly suggestive because: (a) at the suppression hearing, the prosecution had produced only petitioner's mugshot, not the entire mug book; and (b) his mugshot was marked "Clarkson Ave Flat/Bedford" ("Flat" likely referring to Flatbush Avenue), which was near the location of the shooting; and (c) his mugshot was marked "marihuana," indicating that he had previously been arrested for a crime involving marijuana. Because Britt's identification of petitioner's mugshot was only two weeks before his identification of petitioner in the lineup, petitioner contended that Britt's lineup and in-court identification of him should have been suppressed.

In rejecting this argument, the suppression court noted that, according to the unrebutted testimony at the suppression hearing: (a) there were between 50-100 mugshots in the book when Britt reviewed it, about half of which were African-American (as is petitioner), far more than the generally-used 6 picture photo array; (b) all of the mugshots were marked to show the prior crime, some for felonies and some misdemeanors, for which the subject had been arrested; (c) the mugshots in the book were frequently changed, so it could not be produced at the hearing in the same condition it was in at the time Britt saw it; (d) all of the mugshots showed the location

---

[1] Although a defendant normally has the burden of proof under New York law to prove that a photographic identification was unduly suggestive, where the prosecution is unable to produce the photo array, there is a presumption that it was unduly suggestive which the prosecution must rebut. See People v. Johnson, 106 A.D.2d 469, 482 N.Y.S.2d 563 (2d Dep't 1984).

of the arrest within or near the precinct, and the Britt shooting did not occur on Clarkson Avenue, but on Parkside Avenue and Flatbush;  (e) petitioner was not the only person that Britt identified; he first identified another mugshot as "Castro," a person he said "hung out" with the person who had shot him, who he subsequently picked out as petitioner; (f) there was no evidence that the detective before whom Britt reviewed the mug book, who was not the detective investigating the Britt shooting, had done anything to suggest which of the 50-100 pictures Britt should select; and (g) there was no evidence that Britt knew petitioner's name, so there was no basis to find that the pedigree information on the picture, which was present on all of the mugshots, would have assisted Britt.  Accordingly, the suppression court held that the prosecution had met its burden of demonstrating that the photographic identification was not unduly suggestive.

Petitioner also contended at his suppression hearing that the lineup identification should have been suppressed independently because, of the six subjects in the lineup, including him, only he was wearing a blue bandana; the rest were green, which rendered the lineup unduly suggestive.  (The police had put bandannas on all of the subjects because petitioner had dreadlocks.)  After reviewing color photographs of the lineup, the suppression court rejected this as well:

> Although defense counsel has argued that the defendant's bandana in the lineup was a different color from the fillers' bandanas, it appears that the defendant, filler four, and filler six are all wearing blue bandanas, and fillers two, three, and five are wearing green bandanas. Thus, there was nothing particularly distinctive about the defendant's bandana.

Based on the ruling of the suppression court, Britt was permitted to testify at trial that he recognized petitioner and that he had identified him out of the lineup.

The Appellate Division affirmed the suppression court's ruling, holding:

> Upon our review of the record of the hearing, we find that the photographic array was not suggestive. As to the lineup, there is no requirement that a defendant in a lineup be surrounded by individuals nearly identical in appearance. Here, the alleged variations in appearance between the fillers and the defendant were not so substantial as to render the lineup impermissibly suggestive.

People v. Reaves, 112 A.D.3d 746, 747, 976 N.Y.S.2d 228, 229 (2d Dep't 2013) (citations and quotation marks omitted), leave to app. denied, 22 N.Y.3d 1202, 986 N.Y.S.2d 422 (2014) (table).

### 2. Analysis

Because the Appellate Division decided this point on the merits, its decision attracts the provisions of 28 U.S.C. § 2254(d)(1). That statute requires petitioner to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005). The Supreme Court has made clear that the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . ." Ryan v. Gonzales, __ U.S. ___, 133 S. Ct. 696, 708 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)).  Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations.  See, e.g., White v. Wheeler, 577 U.S. ___, 136 S. Ct. 456, 460 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting Burt v. Titlow, 571 U. S. ___, 134 S. Ct. 10, 16 (2013))).  Moreover, with regard to factual determinations, "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

"In general, a pretrial photographic identification procedure used by law enforcement officials violates due process if the procedure 'is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" Jarrett v. Headley, 802 F.2d 34, 40–41 (2d Cir. 1986) (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1969)). "It is the likelihood of misidentification which violates a defendant's right to due process." Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375, 381-82 (1972).  There is "no requirement . . . that photos in an array present only individuals who match petitioner's appearance in every detail." Velazquez v. Poole, 614 F. Supp. 2d 284, 300-01 (E.D.N.Y. 2007). Instead, the Second Circuit merely requires that "[t]he array must not be so limited that the defendant is the only one to match the witness's description of the perpetrator." United States v. Maldonado-Rivera, 922 F.2d 934, 974 (2d Cir. 1990).

Here, the Appellate Division affirmed the trial judge's determination, which included a factual finding as to the colors of the bandanas in the lineup. This factual determination is entitled to great deference which "must be sustained unless it is clearly erroneous." Felkner v. Jackson, 562 U.S. 594, 598, 131 S. Ct. 1305, 1307 (2011) (internal quotation marks omitted). Indeed, "[o]n federal habeas review, AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Id. (internal quotation marks omitted).

With regard to the mug book, Britt picked petitioner's photograph out of a minimum of 50 and as many as 100 photographs, about half of which were African-Americans. As the suppression court observed, the sheer number of photographs and the absence of any suggestive influence from the police were sufficient indicators of non-suggestiveness. The suppression court's ruling and the Appellate Division's affirmance easily survive habeas review.

With regard to the lineup, I have looked at the color photographs that the suppression court reviewed, and, if anything, it seems to me that the suppression court was more generous to petitioner in finding a mix of colors than the photographs themselves suggest. The grainy photographs are not frontal shots of the lineup, but angle shots down the length of the lineup in which petitioner is closest to the camera. The wall color behind the lineup participants changes from blue (behind petitioner) to white to yellow along the length of the lineup, and it seems to me that besides the changing wall colors affecting the perception of the bandana colors, alterations in distance, lighting, and shadows are responsible for the apparent subtle difference in the blue-to-green shades of the bandanas. Certainly, given the deference required for factual findings under habeas corpus review, there is no basis for me to second guess the state courts' conclusion that any color differences were not unduly suggestive.

*B. Admission of Petitioner's Statements*

The suppression court accepted petitioner's argument that the arresting officer had failed to properly administer petitioner's *Miranda* rights upon his arrest. Nevertheless, the court held that three post-arrest statements he made could be admitted into evidence because those statements were not the product of interrogation and petitioner volunteered the statements. The statements were described in a statutory notice provided to the defense. First, when the arresting officer advised petitioner that he was to be placed in a lineup, petitioner stated, "I'm not going to stand in a lineup for a robbery. I'm a drug dealer and a G." Second, when the arresting officer responded, "This is for a shooting, not a robbery," petitioner stated, "The one on Parkside, I saw the guy from the shooting yesterday." Third, the arresting officer then asked petitioner, "Do you want to write a statement?" and petitioner responded, "The guy is 'street,' he won't pick me." The Appellate Division affirmed the suppression court's rulings, holding that

> the evidence presented at the suppression hearing supports the Supreme Court's determination that the defendant's spontaneous statements, made after a police officer arrested him but before *Miranda* warnings were administered, were not triggered by any police questioning or other conduct which reasonably could have been expected to elicit a statement from him.

Reaves, 112 A.D.3d at 747, 976 N.Y.S.2d at 230 (internal citations omitted).

Because the Appellate Division decided this issue on the merits, my review is again subject to AEDPA's deferential standard set forth above. The controlling Supreme Court authorities on petitioner's issue are R.I. v. Innis, 446 U.S. 291, 100 S. Ct. 1682 (1980), and Arizona v. Mauro, 481 U.S. 520, 529, 107 S. Ct. 1931 (1987). In Innis, the Supreme Court defined interrogation as either express questioning or its functional equivalent. See Innis, 446

U.S. at 300-01, 100 S. Ct. at 1689.  The functional equivalent of express questioning includes

"any words or actions on the part of the police . . . that the police should know are reasonably

likely to elicit an incriminating response from the suspect."  Id. at 301, 1689-90.  However, the

Second Circuit has explained that police conduct is not the functional equivalent of interrogation

simply because it struck a responsive chord.  See Acosta v. Artuz, 575 F.3d 177 (2d Cir. 2009).

Moreover, although the test of "functional equivalence" is objective, the Supreme Court has

stated that "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate

himself."  Mauro, 481 U.S. at 529, 107 S. Ct. 1936.  Finally, it must be noted that in situations

far closer to the line than that presented here, "courts have not endorsed the proposition that

statements by law enforcement officials to a suspect regarding the nature of the evidence against

the suspect constitute interrogation as a matter of law," and "courts have generally rejected

claims . . . that disclosure of . . . inculpatory evidence possessed by the police, without more,

constitutes 'interrogation' under Innis."  Acosta, 575 F.3d at 191 (citations and internal quotation

marks omitted).

    Petitioner cannot overcome the deferential review standard under § 2254(d).  In many

cases, including Innis itself, the issue was whether statements by the police that resulted in the

defendant making incriminating statements, either before advice of *Miranda* rights or after their

invocation, constituted the functional equivalent of interrogation.  See, e.g., Innis, 446 U.S. at

302-03 (dialogue between two officers in defendant's presence); Acosta, 575 F.3d at 191-92

(statement informing defendant he was picked out of the lineup); Daniel v. Conway, 498 F.

Supp. 2d 673, 681 (S.D.N.Y. 2007) (transmitted salutation from defendant's brother and

expression of confidence in inevitability of defendant's capture); United States v. Heatley, 994 F.

Supp. 475, 476–77 (S.D.N.Y. 1998) (statement to defendant that he "knew [the police] were coming").

Here, with regard to petitioner's first statement, the police officer did not ask petitioner any questions. He simply told him he was taking him to a lineup. There is nothing wrong with informing petitioner where he was going; it was a completely innocuous statement that does not invite a response, much less an incriminating one. Petitioner's response was entirely voluntary and not the result of anything that could be called an interrogation.

Petitioner's second statement was in response to the officer correcting petitioner's misunderstanding – petitioner thought he was going to a lineup for a robbery; he was not. The police officer told him so, and told him the crime that was the subject of the lineup. Again, the police officer asked him no questions and had no reason to believe petitioner would give an incriminating, or indeed any, response.

Finally, with petitioner talking of his own volition, it was perfectly reasonable for the police officer to ask petitioner if he wanted to write a statement. He didn't ask petitioner anything about the crime. Rather, his question called for a yes or no answer; it was petitioner who again chose to give a narrative. There was no reason to think the officer was seeking incriminating statements or any details of the crime itself.

The Appellate Division's ruling that petitioner voluntarily made the subject statements was not contrary to or an unreasonable application of any Supreme Court authority.

*C. Denial of Motion for a Mistrial*

## 1. Background

On the evening following jury selection, the prosecutor notified defense counsel that the police had just located a silent surveillance video of Britt immediately following the shooting. It did not show the shooting itself, but it showed Britt walking and staggering with great difficulty until he collapsed on the sidewalk, and showed him then being attended by and talking to police, fire, and emergency service personnel. In light of the late production, the prosecutor represented to defense counsel that he would not seek to admit the video nor would any witness refer to it.

Nevertheless, the investigating detective, testifying on direct examination, misunderstood the prosecutor's question. The prosecutor asked whether there was video of the "shooting," and although the video only showed Britt after the shooting, the detective answered, "yes."[2] As the prosecutor tried to clarify that there was no video of the shooting itself, it came out that there was video of Britt immediately after the shooting.

Defense counsel moved for a mistrial on the ground that the video should have been turned over prior to trial and defense counsel had not raised it previously based on the prosecutor's assurance that it would not be mentioned. The trial court denied the motion subject to its later review of the video because it saw no prejudice to petitioner in not having a video of Britt staggering and collapsing after being shot. Instead, it instructed the jury:

---

[2] In the television-inspired view of criminal investigations to which jurors are exposed, prosecutors are often, sometimes rightfully, concerned that if they do not show juries that the police have exhausted various investigative techniques – here, looking for surveillance video that would identify the assailant – jurors may take it upon themselves to find the investigation deficient, and substitute their own judgment for what the police should have done. It seems clear to me that this was the purpose of the prosecutor's question, i.e., to show the jury that there was no video identifying who had shot Britt. And, in fact, there was not, or, at least, the police could not find any.

With regard to the video tape it's not going to be played at this trial because it doesn't show anything relevant to the case, and you shouldn't speculate about what's on it because you would be seeing something that has nothing to do with the case. That testimony is stricken from the record.

In the Appellate Division, petitioner contended that the prosecution's failure to produce the video violated the New York discovery requirements set forth in N.Y. Crim. Proc. Law § 240.20(1)(e), which pertains to "photograph[s] . . . or other reproduction[s] made by or at the direction of a police officer, . . ." and § 240.20(1)(g), which pertains to "tapes or electronic recordings which the prosecutor intends to introduce at trial . . .", as well as the "open file" discovery policy of the Kings County District Attorney. From that contention, petitioner further argued that, in giving a curative instruction instead of declaring a mistrial, the trial court had abused its discretion under N.Y. Crim. Proc. Law § 240.70(1), which sets forth a list of available remedies, including "any other appropriate action," for a discovery violation. Petitioner argued that if the video had been produced to him prior to trial, he could have more effectively cross-examined Britt, although he did not point to any inconsistencies between Britt's testimony and the video.

The Appellate Division held that

[t]he decision to declare a mistrial rests within the sound discretion of the trial court, which is in the best position to determine if this drastic remedy is necessary to protect the defendant's right to a fair trial. Here, while the challenged testimony was improper, any prejudice therefrom was alleviated by the Supreme Court's actions in immediately striking the testimony from the record and providing a curative instruction to the jury.

Reaves, 112 A.D.3d at 747-48, 976 N.Y.S.2d at 230 (internal citations and quotation marks omitted).

## 2. Analysis

Significantly, in presenting his argument to the Appellate Division, petitioner relied solely on the statutory provisions of the New York Criminal Procedure Law and the discovery policy of the Kings County District Attorney, and not on any constitutional obligation to produce discovery material under Brady v. Maryland, 373 U.S. 82, 83 S. Ct. 1194 (1963). In fact, the trial court had ruled that this video did not constitute Brady material, and petitioner expressly conceded that point on appeal, choosing instead to rely exclusively on New York law.

The effect of this formulation of the argument and petitioner's concession is that the issue is not cognizable on federal habeas corpus review. It is well established that habeas corpus can be used only to remedy violations of federal constitutional law, not state law. Whether a state court has properly applied a statute is not an issue that is reviewable on federal habeas corpus. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991); see also Mosby v. O'Meara, No. 12-cv-1543, 2015 WL 4871803, at *6 (N.D.N.Y. Aug. 13, 2015) ("[T]o the extent that New York state law provides greater protection than federal constitutional requirements, it defines state law only, and any misapplication of that state law is not cognizable on federal habeas review."). For this reason, federal courts decline to hear habeas corpus claims under N.Y. C.P.L. § 240.70(1). See Lynch v. Graham, No. 10-cv-589, 2011 WL 5154143, at *7 (W.D.N.Y. Oct. 28, 2011) ("Lynch's claim [for abuse of discretion under N.Y. Crim. Proc. Law § 240.70(1)] raises an issue of whether the state court properly applied a statutory rule of discovery, not an issue of federal constitutional law. As such, it is not cognizable on habeas review."); Taylor v. Rivera, No. 07-cv-8668, 2011 WL 4471919, at *29 (S.D.N.Y. April 18,

2011) ("To the extent Petitioner intends to raise a claim that the 911 tape should have been produced under New York state law . . . that claim cannot be reviewed by this Court. . . . [S]ee also N.Y. Crim. Proc. § 240.70.").

Petitioner's claim is therefore rejected.

### D. Excusal of Juror

#### 1. Background

On the first day of trial, the court officer reported to the court that juror number one had "some kind of problem."  The trial court advised the attorneys that it intended to question the juror (in the presence of both parties) to see what the problem was, and further advised them that, depending on the problem, it might allow her to continue to sit, and consider releasing her prior to the commencement of deliberations.  Defense counsel did not object to this procedure.

Upon questioning, juror number one advised the court that she had not realized that she lived so close to the location of the incident, and was concerned that she might recognize family members of the participants if they entered the courtroom.  She would also have to circumvent the location when she traveled to court to avoid passing by it.  The trial court advised her to do so; it further advised her to inform the court officer, but not the other jurors, if indeed she recognized anyone who entered the courtroom.  Last, it advised her not to act as an "investigator," and she agreed she would not.  The court then asked the attorneys at sidebar if they had any additional questions, and the record shows they did not.  Defense counsel did not ask for the juror's recusal or object to her remaining on the jury.

Just before the presentation of the prosecution's last witness, the trial court reconsidered the issue, and indicated that it wanted to ask the juror if her knowledge of the crime scene would

influence her evaluation of the evidence. Defense counsel consented to this procedure. The juror's responses to the court's questions were somewhat contradictory. The juror indicated that she had been influenced "a little bit," and that it would affect her because she was "just worried." But she also testified that she wouldn't be influenced by living where she could see the crime scene. She further assured the court that her exposure would not affect her verdict and she had no doubts about that. After consulting with petitioner, defense counsel moved for her to be discharged, and the trial court granted the motion.

But on appeal, petitioner argued that the trial court should have discharged the juror immediately, when the issue first arose, rather than waiting until near the end of the prosecutor's case. This was required, according to petitioner, pursuant to N.Y. Crim. Proc. Law § 270.35, which requires disqualification if the court finds that a juror is "grossly unqualified." The Appellate Division held that "[t]he defendant failed to preserve for appellate review his contention that he was deprived of a fair trial by the Supreme Court's delay in discharging a juror who expressed concerns that may have affected her ability to be fair and impartial." Reaves, 112 A.D.3d at 748, 976 N.Y.S.2d at 230.

## 2. Analysis

There are two reasons why I cannot review the merits of petitioner's claim. First, as presented to the Appellate Division, it was not a federal constitutional claim. Petitioner simply argued that the trial court had not appropriately applied the New York Criminal Procedure Law. Nothing in his argument suggested that there was a federal constitutional claim; the words "due process" or even "fair trial," which itself would not even be sufficient to indicate the presence of such a claim, nowhere appear in the argument. See Daye v. Attorney Gen., 696 F.2d 186, 193

(2d Cir. 1982) (*en banc*).  Thus, his argument before me suffers from the same infirmity as his preceding point – I cannot review questions of New York law.

Second, even if petitioner had presented a federal constitutional claim to the Appellate Division, its holding that the claim was "unpreserved" means that it is procedurally barred in this court.  A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment."  Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)) (emphasis omitted).  When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision.  See, e.g., Coleman, 501 U.S. at 729-30, 111 S. Ct. at 2554; Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state.  Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)).  If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative.  See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038, 1044 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review.  See, e.g., Downs v. Lape, 657 F.3d 97 (2d Cir. 2011). New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2).  This rule has been interpreted by the New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error."  People v. Luperon, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 739 (1995); see also People v. Hicks, 6 N.Y.3d 737, 810 N.Y.S.2d 396 (2005).

Once it is determined that a claim is procedurally barred under state procedural rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice.  See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; Harris v. Reed, 489 U.S. at 262, 109 S. Ct. at 1043.  The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent.  See Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the

procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488, 106 S. Ct. at 2645) (alteration in original). Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, id. at 488-89, 2645-46, the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 1591-92 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye, 696 F.2d at 191.

As discussed below, petitioner raised numerous claims of ineffective assistance of counsel in his § 440 and *coram nobis* motions. However, he never contended that his trial counsel was ineffective for not seeking disqualification of this juror following the trial court's first inquiry of her.[3] He therefore cannot claim ineffective assistance of counsel as the cause for failing to preserve this argument. Nor does the record admit to any other basis for showing cause and prejudice for failing to preserve the point. Finally, the excusal of the juror before the end of the prosecution's case, instead of at an earlier point, comes nowhere near satisfying the standard for manifest injustice. Accordingly, my review of this point, even assuming *arguendo* that it presents a federal constitutional claim, is procedurally barred.

## II. Ineffective Assistance of Trial and Appellate Counsel Claims

Most of the numerous ineffective assistance of trial counsel claims that petitioner raised in his § 440 motion were "on the record" claims that could have been, but were not, raised on

---

[3] In his § 440 motion, petitioner raised a factually related point – that the trial court's second inquiry of this juror that led to her removal was in the robing room, in the presence of both counsel, but outside his presence, and thus he was deprived of his constitutional right to be present at all material stages of the proceedings. The record showed that following the robing room conference, defense counsel conferred with petitioner and then moved to remove the juror, which the trial court granted. The § 440 court held that his claim of not being present was procedurally barred because the occurrence of the conference outside petitioner's presence was apparent on the record and the claim could have been raised on direct appeal. Petitioner never attempted to show ineffective assistance of trial counsel with regard to this claim and thus, as explained immediately below, cannot show cause and prejudice in this Court to relieve him of the procedural bar.

direct appeal. Accordingly, the § 440 court held, as to these claims, that petitioner was procedurally barred from raising them in a § 440 motion. This statutory procedural bar is firmly established and regularly followed under New York law, and would, without more, result in a procedural bar in this Court. New York law is well settled that, where a claim of ineffective assistance of counsel is based on errors or omissions that appear on the record, such claims must be raised on direct appeal or they will be deemed procedurally barred when raised collaterally. See, e.g., N.Y. Crim. Pro. L. § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . ."); People v. Jossiah, 2 A.D.3d 877, 769 N.Y.S.2d 743 (2d Dep't 2003); People v. Hickey, 277 A.D.2d 511, 511, 714 N.Y.S.2d 821, 822 (3d Dept. 2000); see also People v. Cooks, 67 N.Y.2d 100, 500 N.Y.S.2d 503 (1986). And federal law is equally well settled that the procedural bar in this context is an adequate and independent state law ground for the decision that will be recognized on habeas corpus review. See Sweet v. Bennett, 353 F.3d 135, 140-41 (2d Cir. 2003); Acevedo v. Capra, No. 13-CV-5579, 2014 WL 1236763, at *10 (E.D.N.Y. Mar. 25, 2014) ("The Second Circuit has regularly held that a court's denial of a § 440.10 motion on the basis of the movant's failure to raise an issue on direct appeal is an independent and adequate state ground barring federal habeas review."), aff'd, 600 F. App'x 801 (2d Cir. 2015); Collier v. Lee, No. 08-CV-3441, 2011 WL 2297727, at *5 (E.D.N.Y. June 7, 2011).

However, as discussed above, petitioner could obtain relief from the procedural bar for purposes of federal habeas corpus review if he can demonstrate cause and prejudice, provided

that he can show his appellate counsel's ineffective assistance in failing to raise these ineffective assistance of trial counsel claims on direct appeal. It is therefore most efficient to start the analysis with petitioner's *coram nobis* motion, in which he raised the ineffectiveness of his appellate counsel.

The Appellate Division summarily rejected his *coram nobis* motion on the merits. See People v. Reaves, 134 A.D.3d 1133, 21 N.Y.S.3d 632 (2d Dep't 2015) (mem.), leave to app. denied, 27 N.Y.3d 1005, __ N.Y.S.3d ___ (2016). This disposition warrants the same level of deference under AEDPA set forth above, requiring petitioner to show that the Appellate Division's rejection of his *coram nobis* motion was contrary to, or an unreasonable application of, Supreme Court authority.

Petitioner's showing is doubly difficult because he must meet not only the AEDPA standard, but the demanding criteria for ineffective assistance of counsel claims set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Petitioner must show that his appellate counsel's representation in not raising the alleged ineffectiveness of his trial counsel "fell below an 'objective standard of reasonableness' judged by 'prevailing professional norms.'" Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) (quoting Strickland, 466 U.S. at 688, 104 S. Ct. at 2064-65). Petitioner must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In applying this test, I am to be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance unless proven otherwise. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Lastly, the law is clear that, when preparing an appeal, an attorney is not required to raise every non-frivolous argument even if asked to do so by his client. Jones v. Barnes, 463 U.S. 745, 751-54, 103 S. Ct. 3308

(1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").[4]

None of the points that petitioner contends should have been raised on direct appeal satisfy this difficult standard. They amount to no more than second guessing his trial attorney, and then second guessing his appellate attorney, each time speculating about what might have happened had his each of them made a different judgment call at particular phases of the pretrial, trial, or appellate proceedings.

### A. *Failure to Call Britt as a Witness at the Suppression Hearing*

First, petitioner contends that at his suppression hearing, his trial attorney should have called Britt as a witness. There is no right to call the identifying witness at a suppression hearing under New York law; it is a matter of discretion if the hearing court feels the record is incomplete. See People v. Chipp, 75 N.Y.2d 327, 337-39, 553 N.Y.S.2d 72, 78-79 (1990). Petitioner contended in his § 440 and *coram nobis* motions that the suppression court was sufficiently concerned about the record being incomplete that it would have been allowed, and he further speculated that had Britt testified, it would have undermined his identification.

Under the doubly-deferential standard of review that applies here, I see neither objective unreasonableness nor prejudice to defendant from trial counsel's decision not to seek Britt's

---

[4] In the state courts, petitioner made much of the fact that he was represented by a lead attorney and an assistant attorney at trial, and he then retained the assistant attorney to represent him on appeal. He therefore contended that the appellate attorney had a "conflict of interest," deterring him from raising ineffective assistance of trial counsel claims. This does not constitute an independent basis for relief. Either his appellate attorney was constitutionally ineffective or not, and his possible subjective motivation for not raising ineffectiveness of trial counsel claims is immaterial. See Rivera v. Miller, No. 05 Civ. 4048, 2006 WL 3230293, at *5 (S.D.N.Y. Nov. 7, 2006) (whether appellate attorney's employment at the same agency as the trial attorney created a conflict of interest is irrelevant where habeas petitioner did not show any adverse effect on his appellate counsel's performance); Brock v. Donnelly, No. 03 Civ. 2594, 2004 WL 895632, at *9 n.7 (S.D.N.Y. April 26, 2004) ("Although trial and appellate counsel were both Legal Aid attorneys . . . [a]ppellate counsel clearly had no basis to allege ineffective assistant of trial counsel given trial counsel's competent performance.").

testimony, and therefore no error in appellate counsel's decision not to raise a claim of ineffective assistance. First, the suppression court merely made comments about the record as it developed during the suppression hearing, and its final decision, rather than its real-time commentary, reflects its determination that the prosecution ultimately met its burden of proof.[5] Second, as discussed immediately below, Britt's trial testimony showed that calling him at the suppression hearing may well have made it worse for petitioner, not better. The Appellate Division therefore did not unreasonably apply Strickland in determining that appellate counsel was not objectively unreasonable in failing to raise this point, nor in concluding that petitioner was not prejudiced by the failure to raise it.

### B. Failure to Seek to Reopen the Suppression Hearing

Second, and relatedly, petitioner contends that when his trial counsel heard Britt's testimony at trial, he should have moved to reopen the suppression hearing, and his appellate counsel's failure to raise that omission as ineffective assistance of trial counsel on appeal constituted ineffective assistance of appellate counsel. At trial, Britt testified to details of a conversation with petitioner shortly preceding the shooting that had not come out at the suppression hearing. Specifically, Britt testified that he and petitioner had discussed Britt purchasing some marijuana from him. Petitioner therefore contended in his § 440 and his *coram nobis* motions that, because his mugshot showed a prior arrest for "marihuana," his trial counsel should have moved to reopen the suppression hearing, and his appellate counsel should have raised trial counsel's failure to do so. Apparently, petitioner's argument was that the note on the photograph would have suggested petitioner's identity in Britt's mind because Britt had sought to buy marijuana from petitioner, thus rendering the mugshot suggestive.

---

[5] See note 1, supra.

There is no basis to conclude the trial court would have granted such a motion; no basis for concluding that Britt's testimony at trial would have led to a different outcome at the suppression hearing,;and thus no basis for finding trial counsel ineffective.  It is at least arguable that the testimony solidified rather than impeached Britt's identification of petitioner, as Britt also testified that he and petitioner had talked for seven or eight minutes and he had gotten a really good look at petitioner.  There was also nothing hinting at suggestive conduct on the part of the police.  The Appellate Division did not unreasonably apply <u>Strickland</u> in holding that appellate counsel was not objectively unreasonable in deciding not to raise this point, nor was petitioner prejudiced by that decision.

Indeed, petitioner sought to use the fact that appellate counsel relied on Britt's testimony on appeal as support for his *coram nobis* motion, but the argument petitioner presented simply illustrates the discretion afforded appellate counsel.  With regard to Britt's testimony at trial, appellate counsel had some options, none of which were wonderful: (1) argue that trial counsel was ineffective for not moving to reopen the suppression hearing; (2) point out, as part of the broader attack on the suggestiveness of the mug book identification, that Britt's testimony at trial further showed that the mugshot was unduly suggestive because it identified petitioner has having a prior marijuana arrest; or (3) not refer to Britt's testimony at all, because its greater detail confirmed the reliability of Britt's identification.

Appellate counsel chose a middle ground by asserting only (2), notwithstanding the fact that, under New York law, arguments of suggestiveness are limited to the suppression court record.  Petitioner's *coram nobis* motion criticized appellate counsel for not choosing (1) as well as or instead of (2) but, considering the weakness of the claim, any of the three options, including choosing either or both of (1) and (2), were well within the discretion afforded appellate counsel

under Strickland. As far as the choice appellate counsel actually made, appellate counsel could reasonably conclude that taking on the difficult burden of showing ineffective assistance of trial counsel for not seeking to reopen the suppression hearing would detract from his point that the suppression ruling itself was wrong, and that Britt's testimony, although not technically admissible to prove that, might well nudge the Appellate Division on direct appeal, if it was headed in that direction, to agree.

This is the classic kind of strategic call that appellate counsel has to make. I cannot find that the Appellate Division, on *coram nobis* review, unreasonably applied Strickland in allowing appellate counsel the discretion to make that call.

### C. Appellate Counsel's Decision Not to Challenge the Suppression Court's "No Attenuation" Ruling

Petitioner's *coram nobis* motion strangely attacked appellate counsel for embracing one part of the suppression court's ruling that was in his favor – that the prosecution had failed to prove attenuation between the photo identification and lineup identification. That is, the suppression court ruled, in dictum, that the mere fact that 15 days passed between the photo identification and the lineup identification was insufficient to cure any undue suggestiveness in the photo identification. Of course, this was an academic point, because the suppression court also found a lack of undue suggestiveness in the photo identification, but I see no reason why appellate counsel would want to challenge the "no attenuation" part of the suppression court's ruling.

Appellate counsel's argument, rather, sought to link the two, just as had the suppression court, so that if he could convince the Appellate Division on direct appeal that the photo identification was bad, the lineup identification might also fall, like a domino. And if that

strategy did not work, his backup strategy was to argue to the Appellate Division that the lineup identification was suggestive independently because of petitioner's allegedly different colored bandana. I cannot see anything wrong with this approach, so I certainly cannot find error in the Appellate Division's decision under AEDPA's deferential standard of review.

   D.  *Failure to Argue that Trial Counsel was Ineffective for Not Viewing the Post-Shooting Video*

In his § 440 motion, petitioner contended that his trial counsel was ineffective for not viewing the post-shooting video of Britt before acceding to the prosecutor's agreement to keep it out and not refer to it, and in his *coram nobis* motion, petitioner contended that his appellate counsel was ineffective for not raising his trial counsel's ineffectiveness on direct appeal.

It is basic to <u>Strickland</u> that at the trial or appellate level, a petitioner has to show prejudice from his counsel's omission. This was a silent video of Britt staggering, collapsing, and then talking to emergency personnel. Nowhere in his § 440 or *coram nobis* motion did petitioner specify what trial counsel could have done had he known specifically what was in that video – and, of course, a video of the victim *in extremis* after he has been shot is something that any defense counsel in an attempted murder case would want to keep from the jury as unduly prejudicial, absent some unusually probative value.

The most that petitioner could say about prejudice in his *coram nobis* motion is that his appellate counsel had *claimed* there would be prejudice because perhaps trial counsel could have more thoroughly cross-examined Britt. That is just saying that because appellate counsel was stuck with a weak argument, he should have made a weaker argument. Neither appellate counsel on direct appeal nor petitioner in his § 440 or *coram nobis* motion could point to any inconsistency between Britt's testimony at trial and the depiction in the video. That may or may

not be one reason why petitioner's argument failed on direct appeal, but it is certainly a reason why the Appellate Division did not unreasonably apply <u>Strickland</u> in rejecting petitioner's argument on *coram nobis*.

### E. Failure to Seek to Challenge Petitioner's Admissions for Lack of Notice

Under N.Y. Crim. Proc. Law § 710.30(1)(a), the prosecution is required to give a pretrial notice ("§ 710 notice") of any statements by a defendant that it intends to use at trial. The prosecution did so here, giving notice of petitioner's three statements as described above in connection with the suppression hearing. However, at the suppression hearing, the testifying detective to whom petitioner made the statements amplified on the content of petitioner's first and second admissions. His complete testimony at the suppression hearing as to those first two admissions was: "[H]e told me he saw the guy yesterday around. That everyone is saying that he shot him. I'm a drug dealer. You know how that block [sic]. He came out of town, and he was trying to hustle and guys were not going to go for that."

In his § 440 motion, petitioner contended that trial counsel was ineffective for not having moved at the suppression hearing to have precluded the detective's testimony on the additional ground that it was inconsistent with the § 710 notice. In his *coram nobis* motion, he contended that his appellate counsel was ineffective for not having raised trial counsel's ineffectiveness on direct appeal.[6]

A motion by trial counsel objecting to the detective's testimony on the ground that it differed from the § 710 notice would have been a long shot. The statute appears to be highly elastic. First, if a hearing is held on the admissibility of the matters contained in the notice, then

---

[6] The District Attorney's response to the *coram nobis* motion appears to have interpreted the motion as additionally challenging trial counsel's failure to object to the differences between the hearing testimony and the § 710 notice at trial (as well as the at the suppression hearing). I don't read petitioner's motion that way.

any defect is cured because the testimony at the suppression hearing itself provides notice; it seems the purpose of the statute is mainly to preclude surprise at trial.  See e.g., People v. Kirkland, 89 N.Y.2d 903, 653 N.Y.S.2d 256 (1996).  Second, the statute does not require a verbatim recitation of the admission; the test seems to be whether the admission is "substantially the same," and it is not uncommon for police witnesses to give additional content to a witness's statement beyond what is provided in the notice.  See e.g., People v. Mais, 71 A.D.3d 1163, 1166, 897 N.Y.S.2d 716, 720 (2d Dep't 2010) ("[T]he County Court should not have precluded the portion of the defendant's statement to Officer Manzella in which he denied coming from a house, since the notice provided pursuant to CPL 710.30 informed the defendant of the 'sum and substance' of the conversation sought to be introduced at trial.").  Finally, the New York courts seem particularly indulgent where the same officer who heard the statements described in the § 710 notice provides the additional testimony as to the contents of the statements at the suppression hearing, as was the case here.  See People v. Coleman, 256 A.D.2d 473, 474, 682 N.Y.S.2d 402, 403 (2d Dep't 1998) ("To the extent that the CPL 710.30 notice did not include the entire statement, the remaining part of the statement was made to the same police officer during the same conversation, in the same location as the statement identified in the CPL 710.30 notice.  Therefore, the defendant was given sufficient notice of the statement so as to enable him to timely move to suppress it.").  These points, particularly the last, are important because, in fact, at the conclusion of the suppression hearing in the instant case, trial counsel made it clear that his motion to suppress included "any statement that my client gave . . . [,]" so it is clear that he moved against the entirety of the testimony about the statements, not just the contents of the notice.

Trial counsel adopted a far more targeted strategy than the purely technical point that petitioner now says he should have raised. His effort was to show that the detective dissembled about giving *Miranda* warnings and then subjected petitioner to a virtual interrogation. Trial counsel nearly succeeded, convincing the suppression court not to credit the detective's testimony that he had administered *Miranda* warnings, and he lost the motion only because petitioner's statements were not the product of interrogation. Under the doubly-deferential standard of review of the Appellate Division's *coram nobis* decision, I cannot find its determination that trial counsel was neither objectively unreasonable, and that petitioner was not prejudiced, to itself have been an unreasonable application of Strickland.

### F.  *Failure to Move for Mistrial Based on Prosecutor's Summation*

In his § 440 motion, petitioner contended that the prosecutor committed misconduct during summation in the following respects: (1) vouching for Britt's credibility; (2) asking the jury to infer that the police had searched for a witness that Britt had identified (named "Hunt"), when there was no evidence to support such a search; (3) vouching for the adequacy of the police investigation; and (4) appealing to racial biases and stereotypes by asking the jury to infer why no witnesses in that neighborhood had come forward. Trial counsel made a number of objections during summation, most of which were sustained with instructions to disregard the prosecutor's statement; petitioner contended that trial counsel was ineffective for not seeking a mistrial. In turn, in his *coram nobis* motion, he argued that appellate counsel was ineffective for not raising trial counsel's ineffectiveness on direct appeal.

Having reviewed the closing arguments in detail, I see no reasonable prospect that a mistrial motion would or could have been granted. Petitioner's trial counsel attacked Britt, his horrendous criminal history, his initial obstruction with the police, and his ultimate identification

of petitioner with the utmost of aggressiveness. He also attacked the quality of the police investigation. The prosecutor, in response, in no way personally vouched for Britt; all that he did was argue the facts that would support a conclusion that Britt was credible. (For example, petitioner, in his *coram nobis* motion, protested the fact that the prosecutor argued to the jury that Britt was credible because, among other things, he "looked at you straight in the eye.") Petitioner's argument to the Appellate Division in his *coram nobis* motion effectively advanced a view that if the prosecutor asked the jury to draw inferences from the evidence, rather than limiting his argument to the direct evidence itself, that was effectively urging them to put their faith in him rather than the evidence. That of course is not the law; the prosecutor's job is to get the jury to draw reasonable inferences from the evidence to determine a defendant guilty beyond a reasonable doubt. I saw nothing personal in the prosecutor's presentation.

This is not to say that the prosecutor made no excessive statements. He did.[7] But they were few in the context of the entire closing; they were not so prejudicial; trial counsel immediately objected to them; and the trial court forcefully instructed the jury to disregard them. Given the limited standard of habeas corpus review, I cannot find that the Appellate Division unreasonably applied <u>Strickland</u> in concluding that trial counsel was neither objectively unreasonable nor did petitioner suffer prejudice as a result of the lack of a mistrial motion that would have been almost certainly denied.

---

[7] For example, the prosecutor's argument, apparently in another effort to counter what is known as the "CSI effect," that the jury could infer that no witnesses had come forward because any who had seen the shooting were afraid, probably was too much because there was nothing in the record to support it. However, I reject petitioner's argument that this was an appeal to racism. The evidence showed that petitioner had shot Britt because he was a former member of a rival gang who just happened to be in the wrong place. It is not an unfair inference that a witness who actually posed a threat to the shooter might be at equal risk. That has nothing to do with race; whether it is the Mafia or the Green Dragons, the possibility of gang retaliation against witnesses is not farfetched.

*G.  Failure to Preserve "Mode of Proceedings" Error*

Petitioner's final claim of ineffective assistance of appellate counsel is that his appellate counsel on direct appeal should have raised his trial counsel's failure to object to the alleged mishandling of a note from the jury.

There were a total of three exhibits admitted into evidence at trial.  They were not initially sent back to the jury at the beginning of deliberations.  However, the parties stipulated on the record that if the jury requested them, the trial court could send the exhibits back without prior notice to the parties. Specifically, the trial court asked: "If the jury asks to see any evidence[,] do both sides consent to sending the evidence without going back on the record?" Both sides had responded affirmatively.

After a recess, the trial court advised the parties that it had received two notes from the jury on forms apparently provided to the jury to submit notes.  The form for these notes had a line near the bottom, above which was typed, "DO NOT WRITE BELOW THIS LINE."  On the first note, above the line, the jury had requested to see "all three pieces of evidence."  Below the line, an unidentified person, perhaps a juror, had written, and then scratched out, "numbers 1, 2, and 3."

The trial court advised the parties that in response to this note, it had sent back the three exhibits, and that subsequently, it had received the second note, in which the jury announced that it had reached a verdict.

In his § 440 motion, petitioner contended that his attorney should have moved for a mistrial based on the trial court's submission of the exhibits to the jury.  In his *coram nobis*

motion, he contended that his appellate counsel was ineffective for not having raised this ineffective assistance of trial counsel claim on direct appeal. His argument was that the parties' stipulation only encompassed specific requests for evidence, and that the scratch out below the line rendered the request ambiguous, obligating the trial court to clarify the jury's request before responding to the note.

The argument was frivolous when raised in the state courts and has even less merit here, given the narrow standard of federal habeas corpus review. There was nothing ambiguous about the note. "[A]ll three exhibits" could only mean the three exhibits admitted into evidence and nothing else. The scratch below the line could only mean that someone realized that they had written below a line that said "do not write below this line" and so they did what they could to fix that. Strickland does not require either trial counsel or appellate counsel to take positions so absurd that they diminish their credibility to a court, and the Appellate Division did not unreasonably apply Strickland on *coram nobis* in rejecting petitioner's claim.

### H. Failure to Investigate Eyewitness Account

This is the only point that was procedurally proper in petitioner's § 440 motion, as it pertained to an issue outside of the trial record and thus could not have been raised on direct appeal.

During discovery, petitioner's counsel obtained a police report of an interview with a potential witness whose name was redacted from the report. The police officer wrote that the witness was walking behind an unknown black male near the time and at the location of the incident when the unknown black male approached two other black males. She overheard the

approaching black male say, "I'll hit you up tonight."[8]  The witness did not know any of the three men and did not get a good look at them, but thought one of them was "possibly" wearing all black.  The males stopped in front of 271 Parkside Avenue and the witness continued walking.  She then heard numerous shots coming from behind her and immediately sought cover.  She eventually noticed the victim crossing Flatbush Avenue, holding his waist as if he had been hurt.

Petitioner contended that his trial counsel was ineffective for not investigating this report because it might have led to evidence that exonerated him.  At the very least, he argued, the witness might have impeached Britt, who had not testified that the assailant had said "I'll hit you up," or that one of the three men was wearing all black, and it might have suggested that there were two shooters.

The § 440 court rejected petitioner's argument on the merits.  It assumed, *arguendo*, that the witness had seen the encounter just before the shooting and that it was Britt who she observed crossing Flatbush after the shooting, but found that (a) petitioner had failed to submit any evidence, as required under N.Y. Crim. Proc. Law § 440.30(4)(b), to show that his counsel had not, in fact, investigated this witness; (b) the report itself showed that the witness did not see who had fired the shots or even whether the shots were fired by more than one person, and that she did not get a "good look" at the person;  and (c) the witness's account was not significantly inconsistent with Britt's account, and, indeed, could have corroborated Britt's trial testimony that he had a conversation with petitioner preceding the shooting, a conversation that he had not originally disclosed to the police but to which he testified at trial.  It therefore held that:

---

[8] This is a slang expression which means, in effect, "I'll contact you in the near future."  <u>See</u> Urban Dictionary, http://www.urbandictionary.com/define.php?term=hit%20you%20up .

[T]here is nothing in this account that would establish that the defendant was prejudiced by the absence of this person as a defense witness at trial (<u>Strickland v. Washington</u>, 466 U.S. 668 [1984]) or that the purported failure to attempt to locate and speak with this witness deprived the defendant of meaningful representation. . . .

Accordingly, even assuming trial counsel did not attempt to ascertain what this witness actually did or did not see, such conduct does not rise to the level of ineffective representation warranting vacating the judgment.

(internal quotation and citation omitted).

Because the § 440 court decided petitioner's motion on the merits, my review is again constrained by the deference required under AEDPA. Petitioner's argument cannot thread the double needle required first by <u>Strickland</u>'s narrow standard of review and then by AEDPA's further restriction on habeas corpus review.

First, as to objective unreasonableness of counsel, petitioner had the burden of proof to show that his counsel had not, in fact, investigated this witness, and he offered nothing to show that. The most he could argue was that "upon information and belief," his counsel had not investigated, because he could not find a request for the witness's name in the file. As the § 440 court pointed out, the statute requires that "[i]f the motion is based on the existence or occurrence of facts, the motion papers must contain sworn allegations therefore, whether by the defendant or by another person or persons." N.Y. Crim. Proc. Law § 440.10(1)(a). The record that petitioner submitted to the § 440 court was consistent with the possibility that trial counsel had attempted to investigate the witness but had been unable to find her; or had found her and concluded that her testimony would be neutral; or had found her and concluded that her testimony would be harmful. As shown below, it was also possible that, upon reviewing the statement, trial counsel determined that nothing good for petitioner could come of this witness, and that if the prosecution was not calling her (and it had not disclosed that it was), then he was not going to rouse her either. Petitioner offered the § 440 court no way to know, and thus it had

no basis to conclude that petitioner's trial counsel engaged in objectively unreasonable conduct. Its conclusion therefore withstands review under AEDPA's deferential standard.

As to Strickland's second prong, requiring petitioner to show prejudice, he again offered the § 440 court nothing to show what likely would have happened had his attorney investigated this witness (assuming, *arguendo*, the he did not undertake such an investigation). Many cases recognize that "a petitioner's speculative claim about the testimony of an uncalled witness is accorded little weight in federal habeas review." Muhammad v. Bennett, No. 96 Civ. 8430, 1998 WL 214884, at *1 (S.D.N.Y. April 29, 1998) (citing Warren v. Brunell, No. 95-CV6565L, 1997 WL 67828, at *4 (W.D.N.Y. Feb. 11, 1997); Minor v. Henderson, 754 F. Supp. 1010, 1019 (S.D.N.Y. 1991); see also Campbell v. United States, No. 14 CV 438, 2015 WL 1062176, at *10 (S.D.N.Y. March 9, 2015); Yik Man Mui v. United States, No. 99 CV 3627, 2013 WL 6330661, at *25 (E.D.N.Y. Dec. 5, 2013) (a petitioner raising failure to investigate witness as basis for ineffective assistance claim "must produce evidence explaining what the witness would have testified about and that the witness would have actually testified").

If anything, both the police report itself and the trial record suggest that this witness could have made things worse for petitioner. Britt testified that, prior to the shooting, he had a conversation with petitioner. Specifically, although he did not testify that petitioner told him, "I'll hit you up," he did testify that he talked to petitioner about buying marijuana, and that shortly thereafter, petitioner then proceeded to shoot Britt.

Britt's testimony did not contradict the witness's statement to police. Assuming, as petitioner does, that the individuals that witness overheard included the shooter, Britt's testimony corroborated the witness's statement to the police that there were three individuals present – himself, petitioner, and Britt's friend Hunt. The only differences between the witness's

statement as told to the police and Britt's testimony at trial were the specifics of the conversation, and the witness's statement that "possibly" one of the three individuals she saw was wearing all black, whereas Britt testified that petitioner was wearing a gray hoodie. That is far from damning impeachment. The rest of her statement would have corroborated Britt in all material respects. There is nothing that would enable me to find that the § 440 court unreasonably applied <u>Strickland</u> in finding a lack of prejudice.

## CONCLUSION

The petition is denied and the case is dismissed. The Clerk is directed to enter judgment accordingly. A certificate of appealability will not issue as the petition fails to raise any substantial issues. The Court certifies pursuant to 28 U.S.C. § 19l5(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
      June 15, 2016